IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CLOSEOUT GROUP!, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
|     v. | : | |
| | : | |
| VENATOR ELECTRONICS SALES AND | : | |
| SERVICE, LTD. | : | |
| and | : | |
| CHRISTOPHER PAUL-DUDDY, | : | No. 07-5292 |
|     Defendants. | : | |

MEMORANDUM

**Schiller, J.**                                                          **August 6, 2009**

Defendant Christopher Duddy filed a Notice of Motion in this Court seeking to set aside a

default judgment entered against him after Duddy failed to respond to Plaintiff's Complaint.  For the

following reasons, Duddy's motion is denied.

I.       BACKGROUND

The Complaint in this case was filed on December 17, 2007 and included, as to Duddy, a

single claim of negligent misrepresentation, related to the sale of over 19,000 defective humidifiers.

(Compl. ¶¶ 115-21.)  The humidifiers, which were represented as primarily "shelf pulls" in "first

quality condition," arrived with many either not in boxes or in damaged boxes.  (*Id.* ¶¶ 7, 24 & 39.)

When the boxes were opened, many were found to be broken, used, or otherwise defective.  (*Id.* ¶¶

40-42.)  Venator refused to accept the return of the humidifiers or to issue a refund to Closeout.  (*Id.*

¶ 45.)  Duddy failed to respond to Plaintiff's attempts to contact him.  (*Id.*)

Duddy, a resident of Ontario, Canada, also did not respond to the Complaint and a default

judgment was entered against him on March 13, 2008.  A judgment in the amount of $232,543.25

was subsequently entered on August 15, 2008.  Plaintiff's Canadian counsel filed an Application,

on November 6, 2008, in the Ontario Superior Court of Justice to enforce this judgment.  (Pl.'s Resp,

to Def.'s Notice of Mot. [Pl.'s Resp.] Ex. B [Dante Aff.] ¶ 11.)  Defendant was served in the

Canadian action on or about November 26, 2008.  (Def.'s Notice of Mot. [Def.'s Mot.] Ex. A

[Christopher Duddy Aff.] ¶ 48.)

Approximately seven months later, on June 18, 2009, Defendant filed a Notice of Motion in

this Court seeking to set aside the default judgment on the grounds that he was not properly served

with the Complaint in this action and that the claim against him is without merit.  (Def.'s Mot at 2.)

The Court subsequently informed the parties that it would interpret this filing as a pro se motion to

set aside the default judgment.

In support of his motion, Duddy filed his own affidavit and that of his wife, Nancy Paul

Duddy.  Plaintiff avers that Duddy was served at his residence on February 8, 2009.  Duddy contends

that he and his wife were separated at this time.  (Christopher Duddy Aff. ¶ 49.)  Nancy Duddy

likewise attests that she and Christopher were separated from January 7, 2009 through April 15, 2009

and that during this period Christopher did not reside at the residence where service allegedly

occurred.[1]  (Def.'s Mot. Ex. B [Nancy Duddy Aff.] ¶ 2.)

The first attempt at service occurred on January 8, 2008, the day after the couple's separation

allegedly began.  (Pl.'s Resp. Ex. A [Process Server's Aff.] ¶ 6.)  The process server noted a vehicle

registered to Christopher in the driveway, knocked on the door, and was greeted by a middle-aged

---

[1] The dates of separation in Nancy Duddy's affidavit fall a full year after the dates on which the process server testified to having attempted service.  The Court therefore assumes that this is a typo and that Nancy intended to refer to 2008.

woman who stated that she did not know Christopher's whereabouts. (*Id.*)  The process server

returned on February 6, 2008 and observed two vehicles registered to Christopher in the driveway.

(*Id.* ¶ 7).  He was greeted by a man he believed to be Christopher, but who refused to identify himself

or state where Christopher was.  A third service attempt occurred on February 8, 2008, at which time

one of Christopher's vehicles was located in the driveway and the same middle-aged woman

answered the door.  (*Id.* ¶ 8.)  She refused to identify herself and, when told by the process server

that he had documents for Christopher or Nancy, told him to leave them on the door step.  (*Id.*)  The

process server did so and left, noticing as he was leaving that Christopher's other vehicle was pulling

into a neighboring driveway.  (*Id.*)  As the process server drove away he observed this vehicle exit

the other driveway and enter the Duddy's driveway.  (*Id.*)  The Summons was returned executed on

February 12, 2008.  Contrary to this account, Duddy and his wife contend that no documents were

ever left at the residence.  (Christopher Duddy Aff. ¶ 49, Nancy Duddy Aff. ¶ 11.)


## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 60 permits a court, upon motion, to set aside a judgment by

default for reasons including that the judgment is void.  FED. R. CIV. P. 60(b)(4).  "As a general

matter . . . the entry of a default judgment without proper service of a complaint renders that

judgment void."  *United States v. One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir. 2000).

"[A] motion under Rule 60(b) must be made within a reasonable time . . . ."  FED. R. CIV. P. 60(c).

Trial courts possess discretion in determining whether to set aside a judgment, but, upon receiving

a timely motion to set aside, must consider three factors: "(1) whether the plaintiff will be prejudiced

if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether the

default was the result of the defendant's culpable conduct." *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 419-20 (3d Cir. 1987) (citation omitted).

## III.   ANALYSIS

### A.   Defendant was Properly Served

Christopher contends that he was not properly served with the Complaint in this action. Specifically, he asserts that no documents were ever left at his residence and that he was separated from his wife at the time. (Christopher Duddy Aff. ¶ 49.)  His affidavit declares that "the individual arrived after dark did not identify himself and presented himself as familiar with family members." (*Id.*)  Nancy Duddy's affidavit "confirm[s] that on or about the 8th of February approximately 6:30 p.m. and after dark, a male approximately late twenties dressed in dark clothing with a hood [arrived at the Duddy residence]." (Nancy Duddy Aff. ¶ 4.)  The man asked for Christopher; Nancy stated that he was not home. (*Id.* ¶ 5.)  She claims that no documents were left at the house and that she "interpreted the visit as an attempted robbery and was afraid." (*Id.* ¶ 16.)

Plaintiff, relying on the sworn statement of its process server, contends that Duddy was properly served in accordance with Ontario Rule of Civil Procedure 16.03(5), which provides for service at a place of residence when personal service cannot be effected. R.R.O. 1990, Reg. 194, s. 16.03(5).  In such situations an individual can be served by,

> (a) leaving a copy, in a sealed envelope addressed to the person, at the place of residence with anyone who appears to be an adult member of the same household; and
> (b) on the same day or the following day mailing another copy of the document to person at the place of residence.

(*Id.*)  Federal Rule of Civil Procedure 4 permits service in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents . . . ."  FED. R.

CIV. P. 4(f)(1).  The means authorized by the Hague Convention include methods permitted by the

internal laws of the state.  *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) (citing

Hague Convention on Service Abroad, 20 U.S.T. 362, T.I.A.S. 6638, 658 U.N.T.S. 163 (reprinted

in 28 U.S.C.A., FED. R. CIV. P. 4, TREATIES AND CONVENTIONS)).  In addition to the process

server's statement that he attempted service on three occasions and, on the third occasion, pursuant

to the directions of Nancy Duddy, left the documents on the door step, Plaintiff's attorney declared

in an affidavit that he sent a copy of the Complaint and Summons, by first class mail, to Duddy's

place of residence.[2]  (Pl.'s Resp. Ex. B [Dante Aff.] ¶ 5.)  The process server also declared that a

male, believed to be Christopher Duddy, answered the door at the residence only two days before

the date of service, contrary to  Christopher's contention that he was not residing at the home at that

time.  In addition, the process server noted that two cars owned by Christopher Duddy were in the

driveway at the time.

Although the Third Circuit has not articulated a standard for reviewing challenges to a

process server's sworn affidavit, a number of courts in this District have considered this issue.  In

*FROF, Inc. v. Harris*, 695 F. Supp. 827 (E.D. Pa. 1988), the court declared that the defendant's

affidavit, in which he claimed that he was not personally served, was insufficient to rebut the signed

return of service, which indicated personal service on the defendant.  *Id.* at 828.  Prior to the 1983

---

[2] In addition, Plaintiff's attorney's affidavit declares that Plaintiff's Motion for Entry of
Default was served at the Duddy residence on March 11, 2008; the Court's Order entering
Judgment by Default was served on March 14, 2008; the Motion for Entry of Default Judgment
was served on May 20, 2008; and the Court's Order entering Default Judgment in an Amount
Certain was served on August 18, 2008, all by United States first class mail. (Dante Aff. ¶¶ 6-9.)

amendments to the Federal Rules of Civil Procedure, a United States marshal's return of service "was conclusive that proper service had been effected upon a defendant." *Id.* at 829.  Despite noting that it need not decide whether this standard applied to private process servers, the court still concluded that under either this standard "or a more moderate rule which considers the return of service to establish merely a rebuttable presumption that proper service was effected . . . a bare allegation by a defendant that he was improperly served cannot be allowed to belie the private process server's return." *Id.*  In reaching this decision, the court noted that a rule that accorded less weight to the process server's return likely would overwhelm the clerk's office with claims of improper service.  *Id.*

Subsequent cases have affirmed this rule.  In *Constitution Bank v. Painwebber Inc.*, Civ. A. No. 91-5175, 1992 WL 50103 (E.D. Pa. Feb. 29, 1992), the court relied upon *FROF* in concluding that unsworn verifications from the defendant, his secretary, and his daughter, disputing proper service, were insufficient to refute the server's account.  *Id.* at *3.  *Lautman v. Loewen Group, Inc.*, Civ. A. No. 99-75, 2000 WL 772818 (E.D. Pa. June 15, 2000), also analyzed a denial of proper service.  The defendant offered an affidavit claiming he was never personally served and that in fact he was not at his residence on the date, but instead out of town with his wife and two sons.  *Id.* at *10.  Declaring that "[c]ourts in this district have concluded that a return of service by a private process server creates a rebuttable presumption that proper service was effectuated," the court concluded that, absent any corroborating evidence, the defendant's unsupported assertion could not defeat this rebuttable presumption.  *Id.* (citations omitted).

The Court finds the affidavits of Christopher and Nancy Duddy similarly insufficient to rebut the detailed statements offered in the process server's return of service and affidavit.  Moreover,

Defendant has provided no statement or additional evidence detailing where he resided when service was attempted.  As such, the Court concludes that service was properly effectuated on February 8, 2008.

### B.      Defendant Failed to File for Relief Within a Reasonable Time

A motion for relief from judgment must be made within a reasonable time.  FED. R. CIV. P. 60(c)(1).  The circumstances of each case determine what constitutes a reasonable time.  *Gadson v. U.S. Army Sec'y*, Civ. A. No. 03-154, 2008 WL 5046431, at *2 (D. Del. Nov. 24, 2008) (citing *Delzona Corp. v. Sacks*, 265 F.2d 157, 159 (3d Cir.1959).  Factors courts consider include "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice if any to other parties in determining reasonableness." *Id.*

Even if the Court accepts Christopher's assertion that he had no knowledge of this action prior to receiving, in November of 2008, documents relating to the Ontario action, Defendant still waited nearly seven months before filing his motion with this Court. (Christopher Duddy Aff. ¶ 48.)  Duddy offers no explanation for this delay.  Given his knowledge of this matter in November 2008, the Court finds Duddy's long delay in applying for relief from judgment unreasonable.  Moreover, Plaintiff, subsequent to obtaining judgment in this case, retained Canadian counsel to record and enforce the judgment in Canada.  (Dante Aff. ¶¶ 10-11.)  According to Plaintiff, it has incurred considerable legal fees in the Canadian proceedings, which Defendants have vigorously defended. (*Id.* ¶ 12.)  Given these efforts, granting Duddy relief from default in this matter would clearly prejudice Plaintiff.  The Court concludes that Duddy failed to file for relief with a reasonable time.

C.    **The Three Factor Analysis Also Does Not Support Relief**

Even were the Court to assume that the motion to set aside was filed within a reasonable time, the three factors identified by the Third Circuit weigh against granting relief.  These factors include: (1) whether lifting the default will prejudice the plaintiff; (2) whether the defendant possesses a meritorious defense; and (3) whether the defendant's culpable conduct caused the default.  *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 419-20 (3d Cir. 1987) (citation omitted); *see also Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982) (noting that three factors should be applied to requests to set aside both entry of default and default judgment).

Issues to consider in relation to the prejudice factor include:  whether available evidence has been lost and whether a plaintiff has substantially relied upon the judgment. *See Feliciano*, 691 F.2d at 657.  Since this action was commenced, evidence has been lost as the 19,000 defective humidifiers have been disposed of.  Plaintiff has substantially relied upon the judgment, expending considerable time and money seeking to enforce, in Canada, a judgment by default entered approximately ten months before Defendant sought to lift the default.  Plaintiff has established that it would be prejudiced were the default to be lifted.

With regards to the second factor, Duddy's affidavit seeks to disclaim responsibility for the damaged goods, contending, inter alia, that he lacks the qualifications to evaluate the products at issue, that he did not individually inspect them, that he offered Plaintiff the opportunity to inspect and examine the goods prior to sale, and that he never at any time had title to or possession of the items. (Christopher Duddy Aff. ¶¶ 12, 13, 20 & 42.)  None of these claims, even if accepted as true, provide a meritorious defense to the negligent misrepresentation claim against Duddy.

Under Pennsylvania law, which applies to this diversity action, negligent misrepresentation

"'requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of the falsity; (3) with an intent to induce another to act on it; and [ ](4) which results in injury to a party acting in justifiable reliance on the misrepresentation.'" *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136 (3d Cir. 2006) (quoting *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)).  Christopher Duddy's affidavit does not offer facts that place in dispute any of the first three elements of a negligent misrepresentation claim.  His claimed lack of qualifications and failure to inspect all of the items does not relieve him of responsibility for the misrepresentations. Nor does the affidavit dispute the specific misrepresentations identified in Plaintiff's Complaint. In fact, the affidavit affirms some of these alleged misrepresentations, declaring that "[t]he boxes were not damaged on the outside and appeared to be in good condition."  (Christopher Duddy Aff. ¶ 13.)

The only potentially meritorious defense he offers is that he gave Plaintiff an opportunity to inspect and examine the humidifiers, which might be read to place in dispute whether Plaintiff justifiably relied upon Duddy's representations.  "Courts must consider 'the relationship of the parties involved and the nature of the transaction' when determining whether one party's reliance on the allegedly fraudulent representations of another is justifiable."  *Id.* at 135 (quoting *Rempel v. Nationwide Life Ins. Co.*, 370 A.2d 366, 368 (Pa. 1977)).  Here, Plaintiff was justified in relying upon Duddy's representations and choosing not to personally inspect the goods prior to shipment. Duddy had sent Plaintiff photographs of the humidifiers, in which the humidifiers "appeared in new boxes with no visible defects."  (Compl. ¶ 9.)  Duddy confirms that he sent these photographs and does not dispute this description.  (Christopher Duddy Aff. ¶¶ 14, 15, & 21.)  Given these facts, it was reasonable for Plaintiff, a Pennsylvania corporation, to rely upon these photographs and to

choose not to travel to Ontario, Canada to inspect the goods in person.  Defendant has not offered a meritorious defense that places in doubt Plaintiff's reasonable reliance.

Culpable conduct by the defendant may justify leaving a default judgment in place even when removal of the default will not prejudice the plaintiff or a meritorious defense is raised.  *Bonner v. SAJE Int'l., Inc.*, 2004 U.S. Dist. LEXIS 17733, at **4-5 (E.D. Pa. Sept. 3, 2004).  The Court's previous analysis reveals that the culpable conduct of Defendant, who was properly served, but refused to respond to this action, caused the default.  Moreover, even after receiving notice of the action in Canada, which sought to enforce this underlying action, Defendant waited for a prolonged period of time to contact this Court.

## V.   CONCLUSION

Christopher Duddy has failed to refute the evidence that he was properly served in this action and as such has failed to show that the judgment entered against him is void.  His unreasonable delay in seeking relief from the default, even after the date upon which he acknowledges receiving notice of the Canadian action; the prejudice that such relief would cause Plaintiff; and Duddy's inability to provide a meritorious defense to the charge against him further support the Court's decision. Defendant Duddy's motion for relief from judgment is denied.  An appropriate Order will be docketed separately.